Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TJ GUENTTER,<br><br>             Plaintiff,<br><br>     vs.<br><br>SURFACE ONCOLOGY, INC., DENISE TORRES, CARSTEN BRUNN, JEFF GOATER, DAVID GRAYZEL, BEN HICKEY, RAMY IBRAHIM, ROBERT ROSS, ARMEN SHANAFELT, ELLIOT SIGAL, and LAURIE STELZER,<br><br>             Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, TJ Guentter ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Surface Oncology, Inc. ("Surface" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a)

and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Coherus BioSciences, Inc. ("Parent") through merger vehicles Crimson Merger Sub I, Inc. and Crimson Merger Sub II, LLC, (collectively, "Merger Subd") (collectively with "Parent", "Coherus") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a June 16, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Surface's common stock will be converted into the right to receive a number of Coherus shares in accordance with an as of yet determined exchange ratio, reliant upon, amongst other variables, the stock price of Coherus at the time of the consummation of the Proposed Transaction (the "Exchange Ratio"). Additionally, as part of the Proposed Transaction, Surface's pre-merger stockholders will receive contingent value rights ("CVR") for each outstanding share of Surface common stock held.  Similarly to the Exchange Ratio, these CVRs are vaguely defined with as of yet determined variables.  As a result, Surface will become an indirect wholly-owned subsidiary of Coherus.

3.      Thereafter, in support of the Proposed Transaction, the Company and Coherus caused to be filed with the SEC a Form S-4 attaching the Registration Statement on July 7, 2023, which was amended by a Form S-4/A filed on July 24, 2023, (collectively, the "Registration Statement").

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into an agreement which provides consideration that

cannot be accurately calculated by Plaintiff or other stockholders, rendering them unable to vote in an informed manner with regards to the Proposed Transaction.

5.     The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Surface and Parent, provided by Surface management to the Board and the Board's financial advisor Wedbush Securities Inc. ("Wedbush"); and (d) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Wedbush, if any, provided to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Ohio and is a Surface stockholder.

8.     Defendant Surface is a clinical-stage immuno-oncology company focused on using its specialized knowledge of the biological pathways critical to the immunosuppressive tumor microenvironment, for the development of next-generation cancer therapies.  Surface is incorporated under the laws of the State of Delaware and has its principal place of business 50 Hampshire Street, 8th Floor, Cambridge, MA, 02139.  Shares of Surface common stock are traded on the Nasdaq Stock Exchange under the symbol "SURF".

9.     Defendant Denise Torres ("Torres") has been a Director of the Company at all relevant times.  In addition, Torres serves as the Chair of the Board of Directors.

10.     Defendant Carsten Brunn ("Brunn") has been a director of the Company at all relevant times.

11.     Defendant Jeff Goater ("Goater") has been a director of the Company at all relevant times.

12.     Defendant David Grayzel ("Grayzel") has been a director of the Company at all relevant times.

13.     Defendant Ben Hickey ("Hickey") has been a director of the Company at all relevant times.

14.     Defendant Ramy Ibrahim ("Ibrahim") has been a director of the Company at all relevant times.

15.     Defendant Robert Ross ("Ross") has been a director of the Company at all relevant times.  In addition, Ross serves as the chief executive officer ("CEO") of the Company.

16.     Defendant Armen Shanafelt ("Shanafelt") has been a director of the Company at all relevant times.

17.     Defendant Elliot Sigal ("Sigal") has been a director of the Company at all relevant times.

18.     Defendant Laurie Stelzer ("Stelzer") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 9 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Parent is a biopharmaceutical company, focusing on the biosimilar and immuno-oncology market primarily in the United States.

21.     Non-Party Merger Subs are wholly owned subsidiaries of Parent created to effectuate the Proposed Transaction.

<u>JURISDICTION AND VENUE</u>

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

<u>SUBSTANTIVE ALLEGATIONS</u>

*Company Background*

25.     Surface is a clinical-stage immuno-oncology company and engages in the development of cancer therapies in the United States.  The Company develops various antibodies that include NZV930, a fully human immunoglobulin isotype G4 monoclonal antibody for the production of extracellular adenosine; SRF617, a fully human IgG4 monoclonal antibody that

inhibits CD39 enzymatic activity for the production of adenosine and the breakdown of adenosine triphosphate; SRF388 which is in phase II clinical trial targeting interleukin 27; GSK4381562, an antibody targeting CD112R, an inhibitory protein expressed on natural killer and T cells; and SRF114 that is in phase 1/2 clinical trials targeting the chemokine receptor CCR8. Surface has a license agreement with GlaxoSmithKline Intellectual Property (No. 4) Limited and Vaccinex, Inc. to develop, manufacture, and commercialize antibodies, which targets SRF114.  Surface was incorporated in 2014 and is headquartered in Cambridge, Massachusetts.

26.    The Company's recent financial performance press release, revealing financial results from the year preceding the announcement of the Proposed Transaction, indicated sustained and solid performance and projected a cash runway into the third quarter of 2024.  For example, in the March 9, 2023 press release discussing the 2022 results and announcing its 2023 Q1 clinical results, the Company highlighted such milestones as:

a.    In the fourth quarter of 2022, Surface announced encouraging new SRF388 monotherapy data in non-small cell lung cancer (NSCLC) with two confirmed partial responses, as well as a third patient with adenocarcinoma who experienced durable disease stabilization, ongoing for more than 56 weeks. All three of these patients had previous treatment with chemotherapy and with anti-PD-(L)1 agents. Based on these results, Surface opened the second stage of the Simon's 2-stage monotherapy trial which is expected to enroll 40 patients with NSCLC in total. In addition, Surface initiated a single-arm Phase 2 study evaluating SRF388 in combination with pembrolizumab in patients with NSCLC who have progressed after 1-3 prior lines of therapy, including

chemotherapy and anti-PD-(L)1 agents. The study is anticipated to enroll up to 40 patients with NSCLC.

b. In January 2023, Surface announced the first patient had been dosed in a Phase 1/2 study evaluating SRF114 as a monotherapy in patients with advanced solid tumors. SRF114 is a potential best-in-class, fully human, afucosylated anti-CCR8 antibody that has demonstrated highly specific binding properties exclusively to human CCR8 in preclinical studies.

c. Following a strategic portfolio review, Surface announced the decision to pause the internal clinical development of SRF617, a novel antibody targeting CD39, and pursue potential business development opportunities for the program. As a result of the reprioritization, the company conducted a corresponding workforce reduction and implemented cost reduction efforts, which extended cash runway.

d. Surface presented non-clinical SRF388 and SRF114 data at the Society for Immunotherapy of Cancer (SITC) 2022 Annual Meeting in Boston. A poster presentation detailed the immune-suppressive communication, co-localization, and upregulation between IL-27 and PD-L1 expression within the tumor microenvironment, supporting clinical studies evaluating SRF388. Additionally, Surface presented SRF114 preclinical data that demonstrated the antibody's ability to selectively deplete tumor Treg cells, resulting in dose-dependent activation of immune cells, and a potential mechanism to inhibit tumor growth independent of checkpoint inhibition.

e. In October 2022, Cell Reports published findings from a preclinical collaboration study between Surface and VIB detailing the structural basis of

IL-27 receptor activation and signaling by the IL-27 cytokine. The study further elucidated SRF388 binding properties to IL-27 to prevent interaction with the IL-27 receptor, inhibiting the cytokine's signaling activity and providing structural evidence for SRF388's potent antagonistic properties.

27.     Speaking on these positive results, CEO Defendant Ross commented on the Company's positive results as follows, "Our teams have done an outstanding job advancing SRF388 and SRF114, and we are pleased with the progress of both clinical programs."

28.     Ross continued, saying "We believe SRF388 is the first and only anti-IL-27 antibody in clinical development and, based on the encouraging preclinical and clinical data we have generated to date, it holds the potential to become a first-in-class treatment for patients suffering from multiple life-threatening solid tumors. We look forward to sharing additional SRF388 data from our ongoing trials in the first half of 2023."

29.     Ross added, "As for SRF114, CCR8 is a very compelling immuno-oncology target. While several leading pharmaceutical and biotech companies have initiated programs in this space, we believe SRF114 is differentiated from many of them based on its high specificity to human CCR8, leading to a potential best-in-class antibody. We expect to have initial safety and efficacy data in 2024."

30.     These positive results are not an anomaly, but rather, are indicative of a trend of continued clinical and financial success and future potential success by Surface.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory, the Individual Defendants have caused Surface to enter into the Proposed Transaction without providing requisite information to Surface stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33.     Notably, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal which provides consideration that cannot be accurately calculated by Plaintiff or other stockholders, rendering them unable to vote in an informed manner with regards to the Proposed Transaction.

34.     The Registration Statement also fails to indicate what powers the committee of directors formed to review the Proposed Transaction, the "Transaction Committee," had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not in the best interests of shareholders.

35.     Moreover, the Registration Statement is unclear as to the nature of the confidentiality agreement entered into between the Company and Parent, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so, in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

36.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

37.     On June 16, 2023, Surface and Parent issued a joint press release announcing the

Proposed Transaction.  The press release stated, in relevant part:

**REDWOOD CITY, Calif. and CAMBRIDGE, MASS., June 16, 2023** — Coherus BioSciences, Inc. (Coherus, Nasdaq: CHRS) and Surface Oncology, Inc. (Surface, Nasdaq: SURF) today announced that the companies have entered into a definitive merger agreement providing that, at the closing, Coherus will acquire Surface Oncology, a clinical-stage immuno-oncology (I-O) company developing next-generation immunotherapies that target the tumor microenvironment. The Surface acquisition adds two differentiated clinical stage assets to Coherus' novel I-O pipeline: SRF388, a novel IL-27-targeted antibody currently being evaluated in Phase 2 clinical trials in lung cancer and liver cancer, and SFR114, a CCR8-targeted antibody currently in a Phase 1/2 study as a monotherapy in patients with advanced solid tumors.

The transaction was unanimously approved by the boards of directors of both companies and is expected to close in the third quarter of 2023.

"This transaction is well-timed, as it coincides with the accelerating growth of our biosimilar revenues driven by the launch of Cimerli® and near-term launch of Yusimry®. With the agreement to acquire Surface and the expected near-term approval of toripalimab, Coherus is positioned to become one of the very few I-O companies with demonstrated commercial expertise, significant product revenues, and unique, competitively positioned R&D programs addressing critical unmet medical needs," said Denny Lanfear, Chairman and Chief Executive Officer of Coherus. "Toripalimab has recently demonstrated potentially practice-changing overall survival data in nasopharyngeal carcinoma, and its differentiated mechanism of action defines it as a next-generation PD-1. Existing marketed PD-1's transformed the treatment of cancer over the past decade but are effective in only a minority of patients. Additional overall survival gains must come from novel combinations that more broadly target the cancer immunity cycle. The addition of Surface's IL-27 and CCR8 antibodies expands our next-generation I-O pipeline beyond checkpoint inhibition to agents targeting immune-suppressive mechanisms of the tumor microenvironment."

Commenting on the merger, Rob Ross, MD, President and Chief Executive Officer, Surface said, "This combination presents a rare opportunity for two complementary organizations to join together and forge something that is greater than the sum of its parts. By augmenting Coherus' existing capabilities and infrastructure with Surface's innovative pipeline and deep I-O expertise, Coherus is well positioned to develop important I-O medicines for patients which deliver real value for the shareholders of both companies."

Regarding the SRF388 data, Dr. Ross added, "While still early, the new hepatocellular carcinoma (HCC) data are encouraging and suggest that when

administered in triplet combination with checkpoint and VEGF inhibitors, SRF388 holds exciting potential to improve the treatment paradigm for liver cancer. Based on the growing body of data in HCC, non-small-cell lung cancer (NSCLC) and renal cell carcinoma (RCC), SRF388 would be a compelling agent to study in combination with toripalimab in many highly prevalent tumor types."

**Benefits of the Transaction**

***Strengthens Coherus' pipeline with global rights to innovative, competitively positioned, clinical-stage I-O assets***

• SRF388, the only IL-27 targeted antibody in clinical development worldwide, has demonstrated monotherapy activity in multiple tumor types and is currently being evaluated in Phase 2 clinical trials in lung cancer and liver cancer as monotherapy and in combination with checkpoint inhibitors.

• SRF114, a high affinity, fully human IgG1 antibody demonstrated to bind exclusively to CCR8, has established proof of mechanism with pharmacodynamic activity observed in the ongoing Phase 1 trial.

• SRF388 and SRF114 have potential as monotherapy and as combination treatments with otherI-O agents, including Coherus' toripalimab.

***Expands Coherus' I-O franchise to the treatment of tumor types with significant unmet needs***

• Coherus plans to launch toripalimab directly upon approval by the United States Food and Drug Administration (FDA) for nasopharyngeal carcinoma.

• Coherus plans to evaluate SRF388 and SRF114 as monotherapies and in combination with toripalimab for lung cancer, head and neck cancer, and certain other tumor types.

• Novel I-O clinical development will extend Coherus' reach in oncology and expand physician experience with toripalimab. Combinations of toripalimab with SRF388 or SRF114 could yield net sales from multiple Coherus proprietary I-O agents.

***Positive financial impact***

• $20—$25 million in Surface net cash projected at closing will strengthen Coherus' balance sheet and fund ongoing SRF388 and SRF114 clinical trials through year-end 2024, beyond significant value inflection points in 2023 and 2024.

• Pipeline prioritization enabled by the acquisition will focus clinical development activities on competitively positioned I-O programs and reduce budgeted R&D spending by at least $50 million through 2025.

• Potential out-licensing of ex-US rights to SRF388 and SRF114 could raise significant non-dilutive capital in 2024 and 2025.

**Transaction Details**

Under the terms of the agreement, Coherus will issue shares of its common stock at a price of $5.2831 per share to acquire all outstanding shares of Surface stock for a total value equal to the sum of $40 million plus Surface's net cash at closing of the transaction (currently expected to be between $20 and $25 million). Surface shareholders will also receive CVRs for 70% of milestone and royalty-based value of existing programs with Novartis AG (NZV930) and GSK plc (GSK4381562), as well as CVRs for 25% of upfront payments made pursuant to potential ex-US licensing agreements for SRF114 and 50% of upfront payments made pursuant to potential ex-US licensing agreements for SRF388, subject to certain deductions as set forth in the contingent value rights agreement. Amounts under these CVRs are payable for a period of ten years following the closing of this transaction.

The transaction was unanimously approved by the boards of directors of both companies and is expected to close in the third quarter of 2023. The closing of the transaction is subject to certain conditions, including Surface shareholder approval; the availability at closing of at least $19.6 million of Surface cash net of short-term and long-term liabilities, transaction expenses, and other obligations; and other customary conditions. In conjunction with the transaction announcement, Surface is implementing a workforce reduction of approximately 50% of its employees.

### *Potential Conflicts of Interest*

38.     The breakdown of the benefits of the deal indicate that Surface insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Surface.

39.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  While the Registration Statement provides the following, it fails to provide the specific amount of Merger Consideration that these shares will be exchanged for.

| Name and Address of Beneficial Owner [1] | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned |
|---|---|---|
| **5% Stockholders** | | |
| Novartis Institutes for BioMedical Research, Inc. [1] | 3,948,482 | 6.5% |
| Atlas Venture Fund IX, L.P. [2] | 2,945,453 | 4.9% |
| ARK Investment Management LLC [3] | 5,567,224 | 9.2% |
| EcoR1 Capital, LLC [4] | 3,924,713 | 6.5% |
| **Directors and Named Executive Officers** | | |
| Denice Torres, M.B.A., J.D. [5] | 55,666 | * |
| Carsten Brunn, Ph.D. [6] | 28,000 | * |
| J. Jeffrey Goater, M.B.A. [7] | 1,472,430 | 2.4% |
| David S. Grayzel, M.D. [8] | 3,054,316 | 5.0% |
| Benjamin Hickey, M.B.A. [9] | 37,333 | * |
| Ramy Ibrahim, M.D. [10] | 77,900 | * |
| Armen B. Shanafelt, Ph.D. [11] | 111,086 | * |
| Elliott Sigal, M.D., Ph.D. [12] | 311,448 | * |
| Laurie D. Stelzer, M.B.A. [13] | 124,209 | * |
| Robert W. Ross, M.D. [14] | 992,087 | 1.6% |
| Alison O'Neill, M.D. [15] | 277,019 | * |
| All executive officers and directors as a group (13 persons) [16] | 7,005,425 | 10.9% |

40.     Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. However, this information does not provide the specific amount of Merger Consideration that these options, units, and/or awards will be exchanged for.

| Names | Shares Underlying Outstanding In-the-Money Options | Shares Underlying Outstanding Underwater Options[1] | Shares Underlying Restricted Stock Units (# of Shares) |
|---|---|---|---|
| **Directors:** | | | |
| Denice Torres | — | 72,000 | — |
| Carsten Brunn | — | 48,000 | — |
| J. Jeffery Goater | — | 1,369,979 | — |
| David S. Grayzel | — | 108,863 | — |
| Benjamin Hickey | — | 48,000 | — |
| Ramy Ibrahim | — | 77,900 | — |
| Armen B. Shanafelt | — | 111,086 | — |
| Elliott Sigal | 113,636 | 152,359 | — |
| Laurie D. Stelzer | — | 124,209 | — |
| **Executive Officers** | | | |
| Robert W. Ross | 400,000 | 1,326,674 | 33,600 |
| Alison O'Neill | 150,000 | 324,000 | 22,800 |
| Jessica Fees | 150,000 | 344,650 | 22,800 |
| Chandra Adams | 100,000 | 140,800 | 12,600 |

41.     Moreover, certain employment agreements with certain Surface executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to large payouts, compensation not shared by Plaintiff. While the Registration Statement makes references to such agreements existing for certain Company insiders, it is silent as to the specific identity of the Company insiders are a party to such agreements, or the compensation which will be paid if such agreements are exercised as a result of the consummation of the Proposed Transaction.

42.     The Registration Statement also fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43.     The breakdown of the benefits of the deal indicates that Surface insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Surface.

44.     Thus, while the Proposed Transaction is not in the best interests of Surface, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Registration Statement***

45.     On July 7 2023, as later amended on July 24, 2023, the Surface Board and Parent caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

46.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.     Adequate information as to why the Board agreed to merger consideration which could not be reliable ascertained by stockholders prior to the consummation of the Proposed Transaction, including a portion of which being locked up in a non-guaranteed CVR;

b.     What powers the committee of directors created to run the sales process had;

c.     Whether the confidentiality agreements entered into by the Company with Parent differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d.     All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Parent, would fall away; and

e.     Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Surface Financial Projections*

47.     The Registration Statement fails to provide material information concerning financial projections for Surface provided by Surface management to the Board and Wedbush and relied upon by Wedbush in its analyses.  The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

48.     Notably the Registration Statement reveals that as part of its analyses, Wedbush reviewed, "certain internal information, primarily financial in nature, including financial and operating data furnished to us by members of management of Surface, and approved for our use by Surface."

49.     The Registration Statement should have, but fails to provide, certain information in the projections that Surface management provided to the Board and Wedbush.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

50.     Significantly, the Registration Statement fails to provide any projection analyses other than a liquidation analysis prepared by Company Management, to the detriment of Plaintiff and other shareholders.

51.     Relatedly, the Registration Statement fails to provide all relevant inputs, assumptions, and metrics, upon which the provided liquidation analysis prepared by Company Management relies.

52.     The Registration Statement also fails to disclose any material projection data for Coherus, preventing Plaintiff from being fully informed as to the nature of the Merger

Consideration, therefore the Proposed Transaction itself, and preventing him from making a fully informed decision on whether to vote in favor of the same.

53.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

54.     Without accurate projection data for Surface or Coherus being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of the Wedbush's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Wedbush*

55.     In the Registration Statement, Wedbush describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

56.     With respect to the *Comparable Public Companies Analysis*, the Registration fails to disclose:

> a.   The specific applied multiple reference ratios for the metrics analyzed, and the underlying inputs used to determine the same.

57.     With respect to the *Select Precedent Transactions Analysis*, the Registration fails to disclose:

  a.   The specific applied multiple reference ratios for the metrics analyzed, and the underlying inputs used to determine the same.

58.     Additionally, it does not appear that Wedbush performed any in depth analysis of value for Surface, such as a discounted cash flow valuation, and provided only comparative analyses, rendering the information provided to Plaintiff less useful in determining the value of the Proposed Transaction as a whole and consequently, whether or not they should vote in favor of it.

59.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

60.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Surface stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

61.     Plaintiff repeats all previous allegations as if set forth in full herein.

62.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

63.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

64.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

65.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

66.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

67.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

68.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

69.     Plaintiff repeats all previous allegations as if set forth in full herein.

70.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and

Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

71.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

72.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Surface's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

73.     The Individual Defendants acted as controlling persons of Surface within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the

Individual Defendants had the power and authority to cause Surface to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Surface and all of its employees.  As alleged above, Surface is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 31, 2023                                      **BRODSKY & SMITH**

                                                 By:  *Evan J. Smith*
                                                 Evan J. Smith
                                                 240 Mineola Boulevard
                                                 Mineola, NY  11501
                                                 Phone:  (516) 741-4977
                                                 Facsimile (561) 741-0626

                                                 *Counsel for Plaintiff*